* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with modification as to reimbursement for attendant care and the appointment of a guardian ad litem.
 * * * * * * * * * * * *Page 2 PARTIAL PROCEDURAL HISTORY
Plaintiff filed a Form 33 Request for Hearing on March 23, 2005 seeking payment of attendant care fees and seeking to authorize and reimburse other medical expenses. Defendants filed a Motion on June 9, 2005 seeking to have plaintiff returned to the designated care facility from which his mother had removed him. This Motion was held in abeyance by Deputy Commissioner Gillen pending a full evidentiary hearing. Numerous other motions were also filed, and a Motions Hearing was held by the Deputy Commissioner on October 11, 2005. Deputy Commissioner Gillen filed an Order on October 18, 2005 granting defendants' request for the appointment of a guardian ad litem, denying defendants' Motion to Strike plaintiff's Form 33, denying defendants' Motion to Remove Plaintiff's Attorney as attorney of record, and granting defendants' Motion for an Independent Evaluation of plaintiff, including the generation of a subsequent report regarding plaintiff's attendant care needs. On February 16, 2006, Deputy Commissioner Gillen filed an Order appointing Mary Johnson, plaintiff's mother, as Guardian ad litem.
Based upon information received by the parties at oral argument before the Full Commission, the undersigned requested from Ms. Sheila Chavis, the attorney for Mary Johnson as guardian of the person for plaintiff, a copy of the court Order appointing Leslee Sharp as Guardian of the Estate of Ronald Johnson. After multiple requests, Ms. Chavis provided this information in an untimely fashion.
 ORDER
Based upon a careful review of the Industrial Commission records, the evidentiary records, as well as the motions and responses filed by the parties throughout the litigation of this matter, including the fact that Superior Court of Wake County deemed it necessary to remove *Page 3 
Mary Johnson as general guardian for plaintiff, a fact unknown to the Commission at the time the Order appointing Mary Johnson as guardianad litem was being considered by the Deputy Commissioner, the undersigned hereby, sua sponte, vacate the February 16, 2006 Order by Deputy Commissioner Gillen appointing Mary Johnson as Ronald Johnson's guardian ad litem for the purposes of handling and protecting plaintiff's interests in relation to this workers' compensation matter.
The undersigned find there exists a conflict of interest in appointing Mary Johnson as guardian ad litem for the purposes of this workers' compensation matter. IT IS HEREBY ORDERED that Sherman L. Criner shall be appointed as guardian ad litem for Ronald Johnson for the purpose of protecting Ronald Johnson's interests in relation to this workers' compensation matter.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
2. Aetna Casualty Surety was the carrier on the risk.
3. On or about March 20, 1991, plaintiff fell approximately 50 feet down an elevator shaft and suffered multiple injuries including a skull fracture, right and front cerebral contusion, as well as fractures to his L1 transverse process, his C2 anterior body, and his left humerus. Defendants accepted the claim and provided benefits. *Page 4 
4. An employment relationship existed between plaintiff and defendant-employer. Plaintiff was a construction worker for defendant-employer and has not worked since the injury.
5. Plaintiff's average weekly wage was $345.94 with a compensation rate of $230.64.
6. The parties stipulated the following documents into evidence at the hearing:
 (a) Various medical and vocational reports from Southern Rehabilitation Network, Cape Fear Neurology Associates, Dr. Sampath Charya, and a Learning Services Investigative Report.
 (b) The Opinion and Award for the Full Commission filed June 7, 1994, the North Carolina Court of Appeals Opinion filed July 16, 1996, the Opinion and Award for the Full Commission filed October 5, 1998 and all Industrial Commission Forms from March 23, 2005 to the present.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a 25 year-old construction worker who received a severe brain injury when he fell approximately 50 feet on March 20, 1991.
2. Plaintiff suffered multiple injuries including a skull fracture, right and front cerebral contusions and well as fractures to his L1 transverse process, his C2 anterior body, and his left humerus. *Page 5 
3. Plaintiff was found permanently and totally disabled by the Full Commission in an Opinion and Award authored by Commissioner Dianne C. Sellers and filed on October 5, 1998.
4. The Full Commission awarded plaintiff disability compensation for the remainder of his life as well as lifetime medical treatment related to his compensable injury.
5. Mary Johnson is plaintiff's mother and in May 1998 was appointed general legal guardian. Upon information and belief, on February 8, 2006, Mrs. Johnson was removed as general legal guardian and appointed guardian of the person for plaintiff and Ms. Leslee Sharp, a third-party attorney, was appointed guardian of the estate for plaintiff to receive, manage, and administer plaintiff's property, including his disability-related income.
6. Plaintiff has been assigned to various treatment facilities in North Carolina since his injury, including Learning Services Neurobehavioral Institutes in Creedmoor and Durham, Wallace Gardens Care Facility in Wallace, Oasis Rest Home in Benson, Southport Village in Wilmington, and Rocking Robin Residential Care Facility in Spring Lake.
7. The evidence shows that Mrs. Johnson removed plaintiff from Learning Services in Creedmoor in 2002. This removal occurred after an investigation revealed that, following some type of disturbance, staff members entered plaintiff's room and applied a restraint to plaintiff, causing an acute fracture/displacement of plaintiff's clavicle.
8. In April 2003, plaintiff was placed at Rocking Robin Residential care facility at Mrs. Johnson's request. Anne Thompson, the nurse case manager assigned to plaintiff's case, strenuously objected to the placement of plaintiff at Rocking Robin because it was not properly licensed and the staff did not have the appropriate education and training to care for brain-injured *Page 6 
patients. Nevertheless, Mrs. Johnson insisted plaintiff be placed at Rocking Robin and defendants authorized the placement.
9. While plaintiff was a resident at Rocking Robin, Mrs. Johnson was concerned about matters such as inappropriate furnishings, that the facility's water had been turned off, and that a Rocking Robin employee had allegedly had sex with plaintiff in exchange for money.
10. Ms. Thompson visited regularly with plaintiff while he resided at Rocking Robin and initially believed that Rocking Robin was minimally adequate. However, Ms. Thompson's opinion of Rocking Robin changed as plaintiff's treatment continued and she saw that Rocking Robin was meeting plaintiff's needs. Ms. Thompson became pleased with the facility and their treatment of plaintiff despite her original objections.
11. Mr. Prince Shyllon, plaintiff's former attorney, also visited Rocking Robin after Mrs. Johnson expressed her concerns about the quality of care plaintiff was receiving. Mr. Shyllon found none of Mrs. Johnsons' allegations about the quality of care to be true and advised Mrs. Johnson to keep plaintiff at Rocking Robin.
12. Mrs. Johnson testified that on or about June 25, 2004 a Rocking Robin representative called her and told her that Rocking Robin could no longer care for plaintiff because he was too expensive to feed. Mrs. Johnson removed plaintiff from Rocking Robin without notifying her attorney or defendants.
13. Subsequent to plaintiff's removal from Rocking Robin there was, for the first time, sufficient family support to provide permanent care for plaintiff in the Johnson family home. In previous instances, plaintiff had returned to the family home only temporarily because Mr. and Mrs. Johnson would have been the only care providers and plaintiff had a history of *Page 7 
experiencing aggressive behavior and outbursts when he was cared for at home, requiring admission into psychiatric facilities and hospitals.
14. Ms. Thompson visited the Johnson family home once and expressed concern that plaintiff was not getting enough mental stimulation at home. Ms. Thompson further testified that plaintiff was in need of care 24 hours a day and that a health care professional in plaintiff's community would receive between $7.00 and $8.00 per hour to care for plaintiff.
15. Despite a past history of aggressive behavior and outbursts when being cared for at home, plaintiff has not had any outbursts requiring emergency intervention in over two years, while he has been cared for at home.
16. Pursuant to an Order filed by Deputy Commissioner Gillen, plaintiff was sent to the Florida Institute for Neurologic Rehabilitation in March 2006 for an evaluation of his condition and the identification of appropriate living arrangements.
17. Dr. Kevin E. O'Keefe, a clinical neuropsychologist at the Florida Institute for Neurologic Rehabilitation, evaluated plaintiff's condition. Dr. O'Keefe concluded that the family was doing a "good job at home," but suggested that, while living at home, plaintiff should be enrolled in a local day program to provide appropriate and necessary structure for plaintiff.
18. At the close of the evidence of record, plaintiff was receiving adequate care by his family members and it was not unsafe for plaintiff to live in his family home. Nevertheless, plaintiff would benefit from the structure of a regular day program outside of the home while living in his family home.
19. Plaintiff maintains the cognitive ability to be aware of the concepts of family, home, mother, father, brother, etc. Plaintiff has expressed on various occasions that he desires to stay home and that he does not want to live in a residential facility. *Page 8 
20. Without notifying or seeking approval from defendants, Mrs. Johnson made certain alterations to her three-bedroom residence by adding two rooms and a handicap-accessible bathroom. Mrs. Johnson testified that the additional rooms were necessary to accommodate plaintiff and the caregiver who would look after plaintiff at night. Mrs. Johnson also purchased a vehicle in March 2004, several months prior to her removing plaintiff from Rocking Robin, ostensibly to accommodate plaintiff's physical needs. These expenditures were made unilaterally by Mrs. Johnson and were not authorized by defendants or the Industrial Commission. Further, and most importantly, no health care provider had recommended that the home be modified in any manner or that plaintiff needed a particular vehicle for transport. To pay for these expenditures that were made without authorization and have not been shown to be necessary, Mrs. Johnson used plaintiff's disability-related income.
21. Mrs. Johnson alleged that plaintiff has difficulty ambulating and believes he needs a wheelchair. However, Ms. Thompson, a trained rehabilitation expert, never observed any behavior of plaintiff that would cause her to believe plaintiff needed a wheelchair or handicap-accessible facilities. Further, Dr. Charya, plaintiff's neurologist, has not recommended a wheelchair or handicap-accessible surroundings nor has the Florida Institute for Neurologic Rehabilitation made any recommendation for a wheelchair or handicap-accessible surroundings. Based on the evidence at the close of the record, it was not necessary for plaintiff to use a wheelchair or require handicap-accessible surroundings.
22. Defendants were notified after Mrs. Johnson removed her son from Rocking Robin and were aware that plaintiff continued to require 24-hour attendant care after that point. Defendants offered compensation to Mrs. Johnson and the other *Page 9 
caregivers for the attendant care that plaintiff would need. Defendants were willing to compensate Mrs. Johnson and the other caregivers at a rate that would be similar to the rate charged at facilities in the area. Mrs. Thompson testified that the rates at facilities in plaintiff's area ranged from $2,5000 to $6,000 a month. However, Mrs. Johnson requested $8,000 a month.
23. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is permanently and totally disabled as a result of his compensable injury, and is entitled to permanent total compensation in the amount of $230.64 weekly continuing for the remainder of his lifetime, to be paid through the guardian of the estate, Leslee Sharp. N.C. Gen. Stat. § 97-29.
2. There is no evidence to rebut Mrs. Johnson's testimony that she was asked by Rocking Robin to remove her son due to lack of funds to feed plaintiff. As such, Mrs. Johnson was justified in removing plaintiff Rocking Robin based on the premise that the facility requested plaintiff be removed. Godwin v. Swift and Company, 270 N.C. 690, 155 S.E. 2d 157
(1967).
3. Mrs. Johnson's expenditures for the past alterations of the Johnson residence and for the purchase of "plaintiff's" vehicle were not authorized and were made unilaterally. Further, since plaintiff has failed to show that these expenditures were necessary to accommodate plaintiff's actual physical limitations, defendants are not obligated to reimburse these costs. N.C. *Page 10 
Gen. Stat. § 97-25; Timmons v. North Carolina DOT, 123 N.C. App. 456
(1996), aff'd 346 N.C. 173 (1997); McDonald v. Brunswick ElectricMembership Corp., 77 N.C. App. 753 (1985).
4. Plaintiff is entitled to continuing medical treatment related to the compensable injury. This treatment shall include plaintiff's regular attendance in a structured day activity program outside the home. Defendants shall employ a rehabilitation professional to monitor plaintiff's progress and to identify the most appropriate day program for plaintiff on an ongoing basis. This continuing medical treatment shall also include the enlistment of a qualified evaluator chosen by defendants to perform a home evaluation of the Johnson residence. Plaintiff is entitled to future reasonable home modifications, if any, identified by this professional as necessary for plaintiff's physical wellbeing and safety. Defendants shall also authorize and plaintiff shall attend a yearly evaluation at Florida Institute for Neurologic Rehabilitation or similar facility for evaluation and recommendations regarding medical treatment, vocational rehabilitation, and the continued appropriateness of plaintiff being given care in the home rather than in a facility. N.C. Gen. Stat. § 97-25; Timmons v. NorthCarolina DOT, 123 N.C. App. 456 (1996), aff'd 346 N.C. 173 (1997).
5. Plaintiff's family is entitled to appropriate fees for their attendant care services. The award of attendant care services and compensation to family members under N.C. Gen. Stat. § 97-25 is consistent with prior workers' compensation cases addressing the issue of attendant care. Godwin v. Swift and Company, 270 N.C. 690, 155 S.E. 2d 157 (1967); Palmer v. Jackson, 161 N.C. App. 642, 590 S.E.2d 275
(2003).
6. The appropriate fees that a family member rendering attendant care services is entitled to receive is dependent upon the rate charged and received by a professional who provides such services in the injured workers' community. Since the evidence in this case shows *Page 11 
that a professional in plaintiff's community earns between $7.00 and $8.00 per hour to provide the care needed by plaintiff, it is appropriate for those attendant care providers of plaintiff to receive $7.50 per hour. Attendant care shall be provided to plaintiff for 24 hours per day, seven days per week, excluding any hours during which plaintiff attends a structured day program. N.C. Gen. Stat. § 97-25.
7. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Defendants shall pay plaintiff, through plaintiff's guardian of the estate, permanent total compensation in the amount of $230.64 weekly continuing for the remainder of his lifetime.
2. Defendants shall provide all continuing medical treatment related to plaintiff's compensable accident. This treatment shall include, but is not limited to, a regular structured day activity program. Defendants shall employ a rehabilitation professional to monitor plaintiff's progress and identify the most appropriate day program for plaintiff on an ongoing basis. This treatment shall also include the enlistment of a qualified evaluator chosen by defendants to perform a home evaluation of the Johnson residence. Plaintiff is entitled to any future reasonable home modifications, if any, identified by this professional as necessary for plaintiff's physical safety. Defendants shall also authorize and plaintiff shall attend a yearly evaluation at Florida Institute for Neurologic Rehabilitation or similar facility for evaluation and recommendations *Page 12 
regarding medical treatment, vocational rehabilitation, and the continued appropriateness of plaintiff being given care in the home rather than in a facility.
3. Mrs. Johnson's request for reimbursement for expenditures for past alterations of her residence and for the vehicle purchased prior to plaintiff's removal from Rocking Robin, made without authority and without a recommendation of reasonable medical necessity, is DENIED.
4. Plaintiff shall regularly attend an appropriate structured day program.
5. For attendant care provided between the time plaintiff was removed from Rocking Robin until the filing of Deputy Commissioner Gillen's Opinion and Award, the attendant care providers shall provide defendants an accurate accounting of the amount of attendant care provided to plaintiff and the name of the individual who provided said care. Defendants shall pay each attendant care provider $7.50 per hour based upon the accounting provided. However, the total amount reimbursed shall not exceed the actual costs defendants would have paid if plaintiff had remained at Rocking Robin for the period of time in question.
6. For plaintiff's attendant care provided subsequent to the filing of Deputy Commissioner Gillen's Opinion and Award, defendants shall pay Mary Johnson, Dennis Johnson, or other qualified person, the reasonable rate of $7.50 per hour for care 24 hours per day, 7 days per week. No amount is due for the hours during which plaintiff attends a structured day program. This amount is not subject to an attorney's fee.
7. Counsel for Mary Johnson as guardian of Ronald Johnson is not entitled to an attorney's fee.
8. Assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 are not appropriate to be awarded to either party in this matter. *Page 13 
9. Each party shall pay its portion of the costs.
This the 8th day of April, 2008.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1